UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOSIF HAMILTON, JANINA FRENDAK, AND    :
RAISA TKACH,

                                :        04 Civ. 9068 (LTS) (GWG)

                Plaintiffs,

                                :

    -v.-                             <u>REPORT AND</u>

                                :   <u>RECOMMENDATION</u>

MOUNT SINAI HOSPITAL,

                                :

              Defendant.
------------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Josif Hamilton, Janina Frendak, and Raisa Tkach, former lab technicians at Mount Sinai

Hospital, bring this action pursuant to the Age Discrimination in Employment Act ("ADEA"), 42

U.S.C. §§ 621-634, to recover damages against Mount Sinai Hospital for termination of their

employment in 2004. <u>See</u> Amended Complaint, filed Apr. 5, 2007 (Docket # 10). Mount Sinai

contends that plaintiffs were fired because they violated a longstanding hospital policy against

swiping the time cards of other employees. Plaintiffs contend that they were fired so that Mount

Sinai could hire younger workers and that the reason put forward by Mount Sinai for their firing

is pretextual. Mount Sinai Hospital has now moved for summary judgment. For the reasons that

follow, Mount Sinai's motion for summary judgment should be granted.

I.    <u>BACKGROUND</u>

    A.    <u>Facts</u>

      Except as otherwise noted, the following facts are either uncontested or are taken in the

light most favorable to plaintiffs.

      In January 2004, the Mount Sinai Labor Relations Department received a tip that lab

employees were swiping the time cards of other employees in violation of hospital policy.

Counter-Statement Pursuant to Local Civil Rule 56.1, dated Apr. 27, 2007 (annexed as Ex. A to Declaration of Alan Harris, filed May 8, 2007 (Docket # 31) ("Harris Decl.")) ("P. 56.1 Stat."), ¶ 2. Mount Sinai security officers Carmen Fascia and Gilbert Diaz installed a camera to monitor employees swiping their time cards. P. 56.1 Stat. ¶ 3. The videotapes from the camera revealed that the plaintiffs – as well as 17 other Mount Sinai employees – had either swiped the time cards of other employees or had allowed other employees to swipe their time cards. P. 56.1 Stat. ¶¶ 8, 11-13. Diaz was able to identify the plaintiffs as swiping more than one time card on the video and, by comparing the time imprint on the video to the time card swipe log, as having allowed other employees to swipe the plaintiffs' time cards. P. 56.1 Stat. ¶¶ 5-7. The plaintiffs and the 17 other employees identified on the video violating the policy were fired. P. 56.1 Stat. ¶ 21; <u>see</u> Plaintiffs' Termination Notices (annexed as Exs. 8-10 to Defendant's Notice of Motion, filed June 24, 2005 (Docket # 11) ("Motion")). At the time of their terminations Hamilton and Tkach were both 64 years old, and Frendak was 59 years old. Declaration of Raisa Tkach, undated ("Tkach Decl.") (annexed as Ex. 1 to Declarations in Opposition to Defendant's Motion for Summary Judgment, filed May 8, 2007 (Docket # 33) ("P. Decl.")), ¶ 2; Declaration of Janina Frendak, undated ("Frendak Decl.") (annexed as Ex. 2 to P. Decl.), ¶ 2; Declaration of Josif Hamilton, undated ("Hamilton Decl.") (annexed as Ex. 3 to P. Decl.), ¶ 15.

Mount Sinai's "Rules of Conduct" list swiping the time card of another employee, or allowing another employee to swipe one's time card, as a "serious" violation that may result in "dismissal." P. 56.1 Stat. ¶ 1; <u>see also</u> Mount Sinai Medical Center Rules of Conduct, issued Nov. 1, 1970 (annexed as Ex. A to Declarations in Support of Defendant's Motion for Summary

Judgment, filed July 29, 2005 (Docket # 15) ("D. Decl.")), No. 2.  In 2002, Mount Sinai fired 20 other employees for violating the time card swipe policy.  P. 56.1 Stat. ¶ 18.

While plaintiffs violated this policy, see Tkach, Frendak, and Hamilton Decls. ¶ 5, they never did so with the intention or result of defrauding Mount Sinai.  Tkach and Frendak Decls. ¶¶ 10, 13; Hamilton Decl. ¶¶ 9-10.  Rather, they only swiped time cards that were not their own as a courtesy to other employees who were in fact present at work.  Id.  This came about because, in order to maintain an accurate record of hours worked, lab employees are not allowed to swipe their time cards until 15 minutes prior to the start of their shifts.  Tkach, Frendak, and Hamilton Decls. ¶ 8.  Employees would often arrive early, however, to have breakfast with each other.  Id. ¶ 6.  The plaintiffs would swipe time cards for other employees, or would allow other employees to swipe the plaintiffs' time cards, so that only one person would have to get up from breakfast.  Id. ¶ 9.  Plaintiffs did not know it was wrong to swipe another employee's time card, were not familiar with the employee handbook where the policy was stated, and did not realize that just one violation of the policy could result in termination of their employment.  Tkach and Frendak Decls. ¶ 14; Hamilton Decl. ¶ 12.

Additional facts relating to plaintiffs' claims – again, taken in the light most favorable to plaintiffs – are discussed in section III.B below.

B.      Administrative Agency Filings

Following their terminations, all three plaintiffs filed grievances with the Mount Sinai Labor Relations Department, which were denied, see Plaintiffs' Grievance Forms, dated June 8, 2004 (annexed as Exs. 11-13 to Motion); Denials of Plaintiffs' Grievances, dated July 2, 2004 (annexed as Exs. 14-16 to Motion), and also filed charges of discrimination with the United

States Equal Employment Opportunity Commission ("EEOC"), see Plaintiffs' EEOC Charges, dated Jan. 10, 2005 (annexed as Exs. 19-21 to Motion).

The plaintiffs also each filed for unemployment payments with the New York State Department of Labor. See Decisions of New York Unemployment Insurance Appeal Board regarding Tkach and Frendak, dated Sept. 1, 2004 (annexed as Exs. K & L to Harris Decl.) ("Tkach and Frendak Labor Decisions"); Transcript of New York Department of Labor Unemployment Insurance Hearing for Hamilton, dated Nov. 16, 2004 (annexed as Ex. J to Harris Decl.) ("Hamilton Labor Tr."). Tkach and Frendak's applications were initially denied, and then granted on appeal to the Unemployment Insurance Appeal Board. The record does not indicate the status of Hamilton's claim.

II.     APPLICABLE LAW

A.      Summary Judgment Standard

Summary judgment may be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, the evidence of the non-movant "is to be believed," and the court must draw all "justifiable" or "reasonable" inferences in favor of the non-moving party. Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144,

4

158-59 (1970)); <u>Brosseau v. Haugen</u>, 543 U.S. 194, 195 n.2 (2004). "'All that is required [from a nonmoving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" <u>McCellan v. Smith</u>, 439 F.3d 137, 144 (2d Cir. 2006) (quoting <u>First Nat'l Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253, 288-89 (1968)). The nonmoving party, however, cannot defeat summary judgment by a factual argument based on "conclusory allegations or unsubstantiated speculation." <u>Scotto v. Almenas</u>, 143 F.3d 105, 114 (2d Cir. 1998). The nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." <u>Anderson</u>, 477 U.S. at 256. Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." <u>Allen v. Cuomo</u>, 100 F.3d 253, 258 (2d Cir. 1996) (citing <u>Anderson</u>, 477 U.S. at 247-48).

Although the Second Circuit has noted that "an extra measure of caution" is needed in granting summary judgment in discrimination cases inasmuch as direct evidence of discriminatory intent is rare, a finding of summary judgment is nonetheless appropriate for discrimination claims lacking a genuine issue of material fact. <u>Schiano v. Quality Payroll Sys., Inc.</u>, 445 F.3d 597, 603 (2d Cir. 2006) (citing cases); <u>Abdu-Brisson v. Delta Air Lines, Inc.</u>, 239 F.3d 456, 466 (2d Cir.) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases."), <u>cert. denied</u>, 534 U.S. 993 (2001).

B.    <u>Legal Standard for the ADEA</u>

The ADEA provides that "[i]t shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to

his [or her] compensation, terms, conditions, or privileges of employment, because of such

individual's age." 29 U.S.C. § 623(a)(1) (alterations added). To fall under the ADEA's

protection, an employee must be "at least 40 years of age." Id. § 631(a).

Claims brought pursuant to the ADEA are analyzed under the framework established by

the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See D'Cunha v.

Genovese/Eckerd Corp., 479 F.3d 193, 194-95 (2d Cir. 2007). Under McDonnell Douglas, the

plaintiff carries the initial burden of establishing a prima facie case of discrimination. See 411

U.S. at 802; accord St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993); Joseph v.

Leavitt, 465 F.3d 87, 90 (2d Cir. 2006) (citing James v. N.Y. Racing Ass'n, 233 F.3d 149, 153-

54 (2d Cir. 2000)), cert. denied, 127 S. Ct. 1855 (2007). To establish a prima facie case of

disparate treatment, a plaintiff must demonstrate that (1) he or she is a member of a protected

class; (2) his or her job performance was satisfactory; (3) he or she suffered an adverse

employment action; and (4) the action occurred under conditions giving rise to an inference of

discrimination. See Demoret v. Zegarelli, 451 F.3d 140, 151 (2d Cir. 2006) (citing McDonnell

Douglas, 411 U.S. at 802). The fourth element is a "flexible one that can be satisfied differently

in differing factual scenarios." Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 91 (2d Cir.

1996).

If the plaintiff establishes a prima facie case, a presumption of discrimination is created

and the burden shifts to the employer to "'produc[e] evidence . . . [of] a legitimate

nondiscriminatory reason'" for the adverse employment action. Reeves v. Sanderson Plumbing

Prods., Inc., 530 U.S. 133, 142 (2000) (quoting Texas Dep't. of Community Affairs v. Burdine,

450 U.S. 248, 254 (1981)).  "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'"  Reeves, 530 U.S. at 142 (quoting St. Mary's, 509 U.S. at 509).

If the employer produces such evidence, the presumption of discrimination is eliminated, and "the employer will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination."  James, 233 F.3d at 154 (citing cases).  Such evidence may include, for example, a showing that "'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'"  Patterson v. County of Oneida, N.Y.,  375 F.3d 206, 221 (2d Cir. 2004) (quoting Burdine, 450 U.S. at 253).  Importantly, "'[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'"  St. Mary's, 509 U.S. at 507 (quoting Burdine, 450 U.S. at 253) (alteration in original); accord Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000).  Thus, the plaintiff "must produce sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not the employee's age was the real reason for the discharge."  Woroski v. Nashua Corp., 31 F.3d 105, 110 (2d Cir. 1994) (citing St. Mary's, 509 U.S. at 515).  Further, it is not sufficient for the fact-finder to disbelieve the employer's explanation; rather, "'the fact-finder must believe the plaintiff's explanation of intentional discrimination.'"  Reeves, 530 U.S. at 147 (quoting St. Mary's, 509 U.S. at 519).

Nevertheless, while the plaintiff must prove that the defendant's proffered reasons for termination were a pretext, the plaintiff is not always required to "introduce additional, independent evidence of discrimination."  Reeves, 530 U.S. at 148.  "In appropriate

circumstances," the evidence of pretext alone will be sufficient to "infer . . . that the employer is dissembling to cover up a discriminatory purpose."  Id. at 147; see also Schnabel, 232 F.3d at 90 ("the Supreme Court's decision in Reeves clearly mandates a case-by-case approach, with a court examining the entire record to determine whether the plaintiff can satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff'" (quoting Reeves, 530 U.S. at 143)).

Despite the elaborate process set up in McDonnell Douglas, Second Circuit case law makes clear that a court may simply assume that a plaintiff has established a prima facie case and skip to the final step in the McDonnell Douglas analysis, as long as the employer has articulated a legitimate nondiscriminatory reason for the adverse employment action.  See, e.g., Graves v. Finch Pruyn & Co., Inc., 457 F.3d 181, 188 (2d Cir. 2006) (declining to resolve dispute regarding establishment of prima facie case of age discrimination on the ground that plaintiff had not "pointed to any record evidence to dispute [defendant's] legitimate reason (so far as the ADEA is concerned) for the alleged adverse employment action"); Roge v. NYP Holdings Inc., 257 F.3d 164, 168 (2d Cir. 2001) (declining to decide whether prima facie case was made in ADEA case because the defendant "met its burden to put forth legitimate, nondiscriminatory reasons for [plaintiff's] termination, and [plaintiff] has failed as a matter of law to proffer evidence of pretext sufficient to go to a trier of fact"); accord Morris v. Ales Group USA, Inc., 2007 WL 1893729, at *7 (S.D.N.Y. June 29, 2007) ("Rather than apply the McDonnell Douglas test formalistically, the Court will assume that [plaintiff] has made out a prima facie case of discrimination on this claim."); Mathews v. Huntington, 499 F. Supp. 2d 258, 264 (E.D.N.Y. 2007) ("At the outset, the Court assumes that the plaintiff has made out the prima facie case

required by <u>McDonnell Douglas</u>."); <u>Tomney v. Int'l Ctr. for the Disabled,</u> 357 F. Supp. 2d 721,

742 (S.D.N.Y. 2005); <u>Domb v. Metro. Life Ins. Co.,</u> 2003 WL 21878784, at *8 (S.D.N.Y. Aug.

7, 2003); <u>Lapsley v. Columbia Univ. Coll. of Physicians and Surgeons</u>, 999 F. Supp. 506, 515

(S.D.N.Y. 1998); <u>Lanahan v. Mut. Life Ins. Co. of N.Y.</u>, 15 F. Supp. 2d 381, 384 (S.D.N.Y.

1998), <u>aff'd</u>, 181 F.3d 83 (2d Cir. 1999).  We follow that course here and thus consider only

whether plaintiffs have pointed to evidence that reasonably supports a finding that their

terminations were based on age.

III.  <u>DISCUSSION</u>

    A.    <u>Mount Sinai's Reason for the Terminations</u>

As discussed in section I.A, Mount Sinai has presented evidence that the plaintiffs'

employment was terminated for violating its time card swipe policy.  Mount Sinai's explanation

easily satisfies its burden to produce evidence of "a legitimate nondiscriminatory reason" for the

adverse employment action, <u>Reeves</u>, 530 U.S. at 146, thereby shifting the burden to plaintiffs to

provide evidence that "reasonably supports a finding of prohibited discrimination," <u>James</u>, 233

F.3d at 154.

    B.    <u>Plaintiffs' Evidence of Discrimination</u>

Plaintiffs point to eight circumstances they allege show that age was a motivation for

their dismissals: (1) the reason given by Mount Sinai for the plaintiffs' discharge is implausible,

Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment,

filed May 8, 2007 (Docket # 32) ("P. Mem."), at 18-21; (2) the testimony of Mount Sinai

security personnel is contradictory, <u>id.</u> at 21-22; (3) Diaz failed to preserve certain handwritten

notes he made, <u>id.</u> at 23-25; (4) the New York Unemployment Insurance Appeal Board found

that plaintiffs were not guilty of misconduct, id. at 16-17; (5) Mount Sinai supervisors made

statements about retirement, id. at 13-16; (6) plaintiffs were replaced by younger workers, id. at

22-23; (7) younger employees who were discharged for violating the time card swipe policy

were not similarly situated, id. at 25-26; and (8) Mount Sinai saved money by firing older

employees, id. at 26.  We discuss each of these below.

### 1.      Evidence of Pretext

#### a.      Plausibility of Justification for Termination

Plaintiffs argue that a number of circumstances demonstrate the "implausibility" of the

defendant's decision to fire them for violating the swipe card policy, and provide the inference

that their age must be the true reason for their terminations.  See P. Mem. at 18-21.  To show that

a non-discriminatory reason for an adverse employment action is pretextual, however, a plaintiff

may not merely question the rationality of an employer's decision.  As the Second Circuit has

noted, "the ADEA does not make employers liable for doing stupid or even wicked things; it

makes them liable for discriminating, for firing people on account of their age."  Norton v. Sam's

Club, 145 F.3d 114, 120 (2d Cir.) (emphasis in original), cert. denied, 525 U.S. 1001 (1998);

accord Dister v. Cont'l Group, Inc., 859 F.2d 1108, 1116 (2d Cir. 1988) ("Evidence that an

employer made a poor business judgment in discharging an employee generally is insufficient to

establish a genuine issue of fact as to the credibility of the employer's reasons.").

Plaintiffs assert that having other employees swipe one's time card was "commonplace"

at Mount Sinai.  Id. at 19.[1]  Additionally, both Tkach and Frendak state that they regularly had

---

[1]  Putting aside, for a moment, the relevance of this argument, it is notable that the
plaintiffs' only support for this generalization appears to be that plaintiffs themselves and two
other individuals engaged in such swiping.  See Declaration of Keramat Mehrnia, undated

breakfast with a supervisor, Edit Parkhomovsky, before work, and that Parkhomovsky witnessed them swiping time cards for each other without informing them that it was a violation of hospital policy. Tkach and Frendak Decls. ¶¶ 7, 11. While Parkhomovsky asserts that she never witnessed such violations, she testified without contradiction that she did not know that a single violation of the policy could result in termination of employment. Deposition Transcript of Edit Parkhomovsky, dated Sept. 27, 2006 (annexed as Ex. G to Harris Decl.) ("Parkhomovsky Tr."), at 25-26, 36.

Plaintiffs also allege that having another employee swipe one's time card was at times necessary in order to function as an employee at Mount Sinai. P. Mem. at 19-20. Plaintiffs describe several scenarios in which this was the case: sometimes an employee would not be able to complete a lab procedure before the end of the shift, and needed another employee to swipe their time card so as not to incur unauthorized overtime, Tkach and Frendak Decls. ¶ 12; a fellow employee, Keramat Mehrnia, was fired for swiping another employee's time card because his time card was not working and he wanted to test if he was swiping the card properly, see Mehrnia Decl.; employee Ryan Hu was fired for asking another employee to swipe Hu's card at the end of the shift even though Hu had been given permission by his supervisor to work through lunch and leave an hour early, see Hu Decl.; and, at other times, an employee would forget to swipe out and another employee would swipe the time card of the first employee while he or she held the elevator, Tkach and Frendak Decls. ¶ 13.

_____

(annexed as Ex. 5 to P. Decl.) ("Mehrnia Decl."); Declaration of Ryan Hu, undated (annexed as Ex. 4 to P. Decl.) ("Hu Decl.").

In addition to the claims of the necessity and ubiquity of unauthorized swiping, plaintiffs note that Mount Sinai made no effort to determine whether the employees who had their time cards swiped by other employees were in fact present at work.  P. Mem. at 20.  Indeed, Diaz and Fascia admit that they were concerned only with whether employees were violating the time card swipe policy.  Transcript of Gilbert Diaz Deposition, dated Sept. 19, 2006 ("Diaz Tr.") (annexed as Ex. B to Harris Decl.), at 27; Transcript of Carmen Fascia Deposition, dated Sept. 19, 2006 ("Fascia Tr.") (annexed as Ex. F to Harris Decl.), at 34-35.

All these allegations are presented in an effort to show that it was irrational for Mount Sinai to fire employees for a technical infraction.  But, while plaintiffs may have proven their charge of irrationality, the evidence is insufficient to allow a finding that the reason Mount Sinai gave for their firings was a pretext for age discrimination.  See generally Mustafa v. Park Lane Hotel, Inc., 12 F. Supp. 2d 360, 363 (S.D.N.Y. 1998) ("Although plaintiff questions defendant's decision to terminate an employee of 12 years for what might be characterized as a minor infraction, this analysis is irrelevant . . . ."), aff'd, 182 F.3d 900 (2d Cir. 1999).  Here, it is uncontradicted that all employees who were caught violating the policy, including those under the age of 40, were fired.  P. 56.1 Stat. ¶ 21.

This would be a far different case if plaintiffs had presented evidence showing that younger persons caught violating the policy had not been terminated, or that management had arranged an investigation that would ensnare older employees rather than younger employees.  Plaintiffs have presented no such evidence, however.  Thus, while the policy may be irrational, there are no facts from which a reasonable jury could find that it was discriminatory.  See, e.g., Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1187 (11th Cir. 1984) ("The employer

may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or no reason at all, as long as its action is not for a discriminatory reason."). Indeed, there is uncontradicted evidence presented by defendants, who have no burden, that the policy was applied consistently by management – at least, whenever management learned that there were violations – and toward all persons who violated the policy, including those outside of plaintiffs' protected class. P. 56.1 Stat. ¶¶ 18, 21.

Plaintiffs cite Abramowitz v. Intra-Boro Acres, Inc., 64 F. Supp. 2d 166 (E.D.N.Y. 1999), for the proposition that summary judgment should be denied where the violated rule was "commonplace according to the customs of the workplace." P. Mem. at 22. Abramowitz involved the termination of an employee for use of vulgar language that had been routinely used and tolerated. See Abramowitz, 64 F. Supp. 2d at 173. In Abromowitz, however, unlike here, the plaintiff was arguably singled out, as there was no evidence that other employees, including those outside the ADEA's protected group, were terminated for violating the purportedly customary policy. Id. at 172.

Citing Sparks v. Pilot Freight Carriers, Inc., 830 F.2d 1554, 1564 (11th Cir. 1987), plaintiffs assert that Mount Sinai's stated reason for terminating plaintiffs' employment is "implausible." In Sparks, however, the court noted that "[w]here, as here, the employer's asserted justification is that the employee violated a work rule, the employee must prove pretext by showing either that she did not violate the work rule or that, if she did, other employees not within the protected class who engaged in similar acts were not similarly treated." Id. at 1563. Here, plaintiffs admit that they violated the time card swipe policy. Tkach, Frendak, and Hamilton Decls. ¶ 5. Further, plaintiffs provide no evidence that there existed a single individual

under the age of 40 who engaged in similar acts who was not also terminated – let alone an employee whose behavior was known to Mount Sinai management. And, as already noted, it is uncontested that Mount Sinai fired all the employees found to have violated the policy in 2004, and that Mount Sinai had fired a group of employees for the same violation two years earlier. P. 56.1 Stat. ¶¶ 18, 21.

b.     <u>Testimony of Carmen Fascia and Gilbert Diaz</u>

Plaintiffs assert that there were two material contradictions between the deposition testimony of Fascia – one of the security officers who investigated the swipe card violations – and his testimony at the New York State unemployment hearing. P. Mem. at 21-22. At his deposition, Fascia testified that he never "checked" computer log-in records to see if employees had logged in on time because he was focused on whether they had improperly swiped time cards. Fascia Tr. at 34-35. At Hamilton's unemployment hearing, Fascia testified that he had asked for computer log-in records and was told that they are cleared off the computer every two weeks. Hamilton Labor Tr. at 74-75. These two statements do not contradict each other, however. That is, Fascia asked to see computer records, they were not available, and thus he did not examine them. They are arguably contradictory only regarding the cause of his failure to examine the records.

In his deposition, Fascia also testified that he did not speak to the employees' supervisors to learn whether they were at work when another employee swiped their time cards. Fascia Tr. at 32-34. At the hearing, he testified that he "spoke to the supervisor," Hamilton Labor Tr. at 80-82, though it is not entirely clear what he spoke to the supervisor about.

Plaintiffs also assert that the testimony of Diaz – the other security officer involved in the investigation – lacks credibility because it is inconsistent with the testimony of Mayra Lema, a Mount Sinai lab supervisor. P. Mem. at 22. Diaz testified that when he could not identify an employee on the videotapes, he would review photographs of employees on file. Diaz Tr. at 28-29. Lema testified that she assisted Diaz with the task of identifying the employees on the videotape. Transcript of Mayra Lema Deposition, dated Sept. 10, 2006 ("Lema Tr.") (annexed as Ex. E to Harris Decl.), at 40-42. As with Fascia's testimony, these statements are not contradictory with respect to what actually occurred: that is, Diaz both compared the video to photographs and asked Lema for assistance. Diaz simply did not reveal at his deposition that he consulted with Lema.

Accepting the claim that these portions of Fascia and Diaz's testimonies are contradictory or unforthcoming in some respects, a party "cannot defeat summary judgment . . . merely by impugning [a witness's] honesty." McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d 272, 280 (2d Cir. 1999). Nor are the points at issue factual predicates necessary to the proof offered by either side on the issue of the motive for plaintiffs' firings. Thus, even if Fascia or Diaz's testimonies on the particular points noted by plaintiffs were not to be considered by the jury, or were considered only in the versions most favorable to plaintiffs, it would not alter the conclusion that plaintiffs have not marshaled enough evidence to allow a reasonable juror to conclude that plaintiffs were the victims of discrimination. The critical evidence in this case – that the plaintiffs violated the swipe card policy and that Mount Sinai fired every employee who was caught violating the policy – is undisputed.

c.    Spoliation of Evidence

While reviewing surveillance videotapes, Diaz made handwritten notes showing the date and time of each offense and the employee involved. P. 56.1 Stat. ¶ 9. Diaz discarded these notes after Fascia converted the notes into typewritten form, copies of which have been provided to the plaintiffs. Id. ¶¶ 9-10. The plaintiffs assert that Mount Sinai should have preserved the handwritten notes Diaz took while reviewing the videotapes, because Mount Sinai "should have known that the evidence might be relevant in future litigation . . . and . . . the destroyed documents could reasonably be expected to have contained relevant evidence." P. Mem. at 24. Plaintiffs allege that Mount Sinai's failure to preserve such notes brings the credibility of its witnesses into question. Id.

It is difficult to comprehend, however, why the credibility of Diaz is of any moment given the uncontroverted evidence that plaintiffs violated the swipe card policy and that all employees caught violating the policy were terminated. In any event, the spoliation doctrine does not apply here. "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999). A party seeking an adverse inference instruction based on the destruction of evidence must establish

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

Residential Funding Corp. v. Degeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002) (quoting Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 107-12 (2d Cir. 2001)). The party

seeking the sanction bears the burden of establishing these elements.  See, e.g., Smith v. City of New York, 388 F. Supp. 2d 179, 189 (S.D.N.Y. 2005).

With respect to the first element of the spoliation test, the obligation to preserve evidence arises only when "the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." Fujitsu Ltd. v. Fed. Exp. Corp., 247 F.3d 423, 436 (2d Cir.) (citing Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998)), cert. denied, 534 U.S. 891 (2001).  Case law is not clear on how certain "future litigation" must be to meet this test.  If construed too broadly, the rule might require parties to keep a host of documents indefinitely inasmuch as numerous decisions made by businesses and individuals could potentially result in litigation.  The defendant, however, does not appear to question this aspect of the spoliation analysis, see Reply Memorandum of Law in Support of Defendant's Motion, filed May 29, 2007 (Docket # 34), at 12, and thus the Court will not discuss it further.

Turning to step two of the analysis, it is hard to see how the notes were destroyed "with a culpable state of mind."  The notes were merely the handwritten versions of notes that were then put into typewritten form.  In such circumstances, the party destroying the notes would have no reason to think that he or she was destroying notes that would ultimately be useful to any party in the future.  See generally S.C. Johnson & Son, Inc. v. Louisville & Nashville R.R. Co., 695 F.2d 253, 259 (7th Cir. 1982) (no bad faith shown where handwritten notes were typed in the form of a memorandum prior to destruction).

It is not necessary to reach this question, however, as plaintiffs have not shown that the discarded notes would have supported their case.  As to this factor, the aggrieved party bears the

burden of showing that there is a "likelihood that the destroyed evidence would have been of the nature alleged." Kronisch, 150 F.3d at 127 (party has the burden of producing "some evidence suggesting that a document or documents relevant to substantiating his claim would have been included among the destroyed files"); accord Byrnie, 243 F.3d at 108. These notes, however, have no real relevance to this case as it is undisputed that the surveillance tapes showed the plaintiffs engaging in the unauthorized swipes of which they are accused. P. 56.1 Stat. ¶¶ 5-13. In addition, the only evidence in the record as to the contents of these notes is that they are identical to the typewritten version. P. 56.1 Stat. ¶ 10. Thus there is no reason to believe that these notes would have supported the plaintiffs' case. In the absence of any "extrinsic evidence whatever tending to show that the destroyed evidence would have been unfavorable to the spoliator, no adverse inference is appropriate." Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 77 (S.D.N.Y. 1991).

Finally, even if the Court were to find spoliation with respect to these notes, that finding would not have permitted plaintiffs to overcome defendant's summary judgment motion. "[T]he destruction of evidence, standing alone, is [not] enough to allow a party who has produced no evidence – or utterly inadequate evidence – in support of a given claim to survive summary judgment on that claim." Kronisch, 150 F.3d at 128. Where spoliation is raised in the context of a summary judgment, Kronisch held that the party raising it can use spoliation to survive an otherwise meritorious motion only where that party has provided "some (not insubstantial) evidence" to support its claim. Id. More recently, the Second Circuit held that spoliation can allow a party with otherwise insufficient evidence to surmount the summary judgment hurdle only in "borderline" cases. Byrnie, 243 F.3d at 107. This is not a "borderline" case. Rather, the

evidence provided by plaintiffs in support of their claim of discrimination is insubstantial. Thus, even a finding of spoliation with respect to the handwritten notes would not allow plaintiffs' case to proceed.

          d.     <u>New York Unemployment Insurance Appeal Board Findings</u>

The New York Unemployment Appeal Board found that Tkach and Frendak were unaware of the time card policy and that the employees whose time cards they swiped were actually present when they did so. <u>See</u> Tkach and Frendak Labor Decisions. Plaintiffs argue that these findings raise an inference of pretext. <u>See</u> P. Mem. at 16-17. It is not necessary to reach the question of whether these factual findings should have any preclusive effect, however, since we have assumed the truth of both these facts for purposes of this summary judgment motion.

The Board also found that Tkach and Frendak had not engaged in "misconduct." <u>See</u> Tkach and Frendak Labor Decisions. Again, it is not necessary to determine whether preclusive effect should be given to this conclusion since it has no relevance to this case. Even if plaintiffs' actions are characterized as not constituting "misconduct" within the meaning of N.Y. Labor Law § 593(3), there is still no proof that the reason Mount Sinai fired them was because of their age. <u>See generally</u> <u>Mustafa</u>, 12 F. Supp. 2d at 363 n.5 (citing <u>Fondel v. Grumman Aerospace Corp.</u>, 884 F.2d 657, 659 (2d Cir. 1989)) (grant of unemployment benefits does not dispose of issue of discrimination); <u>Obiajulu v. City of Rochester</u>, 975 F. Supp. 469, 472 (W.D.N.Y. Aug. 28, 1997) (citing <u>Fondel</u>, 884 F.2d at 659) (determination by New York State Department of Labor that plaintiff was entitled to unemployment benefits did not estop defendant from asserting that employee was terminated for non-discriminatory reason).

2.      Evidence of Discriminatory Motive

a.      Supervisor Comments Regarding Retirement

Plaintiffs point to three instances in which comments were made by Mount Sinai supervisors regarding retirement of workers, including plaintiffs.  P. Mem. at 13-16.

First, in either 2003 or 2004, Mayra Lema, a Mount Sinai lab supervisor, spoke to Israilov twice about possible retirement, though Lema never told Israilov to retire or threatened her.  Transcript of Sara Izrailov Deposition, dated Mar. 31, 2006 (annexed as Ex. I to Harris Decl.), at 6-8, 13.  Izrailov, who was sixty-four years old at the time, states that Lema referred to her own desire to retire soon, and told Izrailov that she wanted to know if Izrailov planned to retire.  Id. at 13.  In her deposition, Izrailov reports that Lema said "don't tell anyone I told you about retirement."  Id. at 17.  It is unclear whether this referred to Lema's own possible retirement or Izrailov's.  While Lema spoke to Izrailov in a tone "like a friend [who] just care[d] about [her]," id. at 18, Izrailov was upset by her conversations with Lema because she felt that Lema's speaking to her about retirement was motivated by a desire to force Izrailov's retirement.  Id. at 14-27.

Second, Hamilton sent a letter to his supervisor, Laszlo Sarkozy, in 2004 complaining that he had not been paid for overtime wages he was owed.  Transcript of Hamilton Deposition, dated Mar. 20, 2006 (annexed as Ex. D to Harris Decl.), at 245-46.  Hamilton later confronted Sarkozy about this issue, and Sarkozy reacted by saying, "Why don't you retire," and "Better retire."  Id. at 246.  Hamilton was eventually paid the overtime wages he was owed.  Transcript of Hamilton Deposition, dated Mar. 20, 2006 (annexed as Ex. 1 to Motion), at 248-49.

Third, supervisors sometimes asked Frendak if she knew when particular employees were

planning to retire. Transcript of Frendak Deposition, dated Mar. 24, 2006 (annexed as Ex. H to Harris Decl.) ("D. Frendak Tr."), at 256. Plaintiffs' submissions do not identify when this occurred, what employees were involved, or who the supervisors were.

An inference of discriminatory motive may be drawn from "'remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus . . . .'" Gregory v. Daly, 243 F.3d 687, 697 (2d Cir. 2001) (quoting Chertkoa v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 91 (2d Cir. 1996)). However, "the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination." Tomassi v. Insignia Fin. Group, Inc., 478 F.3d 111, 115 (2d Cir. 2007). "For example, remarks made by someone other than the person who made the decision adversely affecting the plaintiff[s] may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark." Id. (citing Ostrowski v. Atl. Mut. Ins. Co., 968 F.2d 171, 182 (2d Cir. 1992)). Nevertheless, courts should not individually evaluate remarks pertaining to a protected class and disregard them if found to be merely "stray" or inoffensive; rather, courts should evaluate whether the remarks "suggest that discrimination motivated a particular employment action." Tomassi, 478 F.3d at 116.

In light of all the other evidence regarding the circumstances of plaintiffs' terminations, the remarks cited by plaintiffs fall far short of allowing a jury to conclude that age discrimination played a part in plaintiffs' terminations. First, there is no evidence that the decisionmakers involved in the terminations were the sources of or condoned any of the comments. The direct evidence regarding the chain of events leading to the termination is that the investigation began when Jeff Cohen, the head of Mount Sinai's Labor Relations Department received a tip from an

employee that workers in the laboratories on the eighth floor were violating the timecard swiping policy. Declaration of Jeff Cohen, dated May 26, 2006 (annexed as exhibit to D. Decl.), ¶ 5. After the Security Department was asked to investigate, Fascia and Diaz provided the Labor Relations Department with their report. Id. Cohen discussed the violations with Fascia, Diaz and Myrna Constantino, the director of the laboratories. Id. ¶ 7. Cohen then decided to discharge the employees involved and notified Fascia and Constantino, who agreed with the decision. Id. ¶ 5. Given this evidence, the comments of Lema and Sarkozy are not attributable to the decisionmakers who terminated plaintiffs. Notably, Cohen affirmatively denies consulting with Lema or Sarkozy about the decision. Id. ¶ 8. While Lema stated in her deposition that she was interviewed by Fascia and Diaz while their investigation was ongoing, and that she helped Diaz identify some of the people on the videotapes, Lema Tr. at 22, 39-42, these circumstances do not permit the inference that her comments were attributable to or condoned by the decisionmakers.

Second, discussion of retirement is common in offices, even between supervisors and employees, and is typically unrelated to age discrimination. Supervisors may want to know when an employee is retiring for completely innocent reasons, such as to plan how to fill the vacancy when it arises, cf. Criley v. Delta Air Lines, Inc., 119 F.3d 102, 105 (2d Cir.) ("an employer's concern about the economic consequences of employment decisions does not constitute age discrimination under the ADEA, even though there may be a correlation with age") (citing Hazen Paper Co. v. Biggins, 507 U.S. 604, 611-12 (1993)), cert. denied, 522 U.S. 1028 (1997), or because they are engaging in ordinary social interaction. As one court has held, "an employer may make reasonable inquiries into the retirement plans of its employees and . . . a

plaintiff should not be able to rely on those inquiries to prove intentional discrimination."

Montgomery v. John Deere & Co., 169 F.3d 556, 560 (8th Cir. 1999). As to Sarkozy's

comment, in the context of a heated work-related dispute, "why don't you retire," or "better

retire," may be of no more significance than if he had said "why don't you quit."

Notably, cases that have found references to retirement to be significant involved other

indicia of an improper animus. See, e.g., Nakis v. Potter, 422 F. Supp. 2d 398, 404 (S.D.N.Y.

2006) (comments by defendant's human resources officer that plaintiff's "bones are getting old

. . . you have the age. Why don't you get out," as well as an additional comment asking why

plaintiff would not retire, as she had the requisite age and years of service, sufficient to make out

prima facie case). But even direct references to a plaintiff's age are not necessarily indicative of

discrimination. See, e.g., Revere v. Bloomingdale's, Inc., 2006 WL 3314633, at *3 (E.D.N.Y.

Nov. 14, 2006) (comments by defendant's president that "we need some fresh blood in the

company . . . we need new and fresh ideas. . . . [and that] longer service employees were

complacent and not as motivated as new employees") (internal quotations omitted); Slattery v.

Swiss Reinsurance America Corp., 248 F.3d 87, 92 (2d Cir.) (statement by chief executive that

he intended to make the image of defendant company "younger"), cert. denied, 534 U.S. 951

(2001); Abdu-Brisson v. Delta Air Lines, Inc., 1999 WL 944505, at *4 (S.D.N.Y. Oct. 19, 1999)

(comments by defendant's vice-president referring to a "contaminated work force" and making

reference to employees' ages); Eric H. Adams v. Delta Air Lines, Inc., 1997 WL 620823, at *2

(S.D.N.Y. Oct. 8, 1997) (comments by an airline captain making reference to pilots "over 60

years old; the number of pilots not expected to retire soon; and derogatory references to 'bad

apples', a 'contaminated workforce', a 'dirty deal' and 'aged flight engineers'"), aff'd, 175 F.3d

1007 (2d Cir. 1999), <u>cert.</u> <u>denied</u>, 528 U.S. 877 (1999).

The Court recognizes that, on this summary judgment motion, plaintiffs are entitled to every reasonable inference in their favor. But any such inferences must be weighed against the other evidence in this case, including the uncontested evidence regarding the sequence of events that led to the terminations. When so weighed, the remarks cited are insufficient to raise an inference of discrimination.

### b.     Replacement by Younger Workers

Frendak and Tkach contend that they were replaced by younger workers. P. Mem. at 22. While such a circumstance may be relevant to establish an inference of discriminatory intent based on age, <u>see</u>, <u>e.g.</u>, <u>D'Cunha</u>, 479 F.3d at 195 (citing <u>Tarshis v. Riese Org.</u>, 211 F.3d 30, 38 (2d Cir. 2000)); <u>Waldorf v. Liberty Main., Inc.</u>, 2007 WL 942103, at *4 (S.D.N.Y. Mar. 29, 2007), plaintiffs' allegation is based solely upon their perception that new workers they had trained in the past appeared younger than the plaintiffs. Tkach and Frendak Decls. ¶ 18. Frendak and Tkach offer no evidence that the workers they trained were in fact younger or, more significantly, that these trainees were hired to replace Frendak and Tkach. Thus, this conclusory assertion is not evidence of discrimination.

### c.     Status of Fired Younger Workers

Fourteen of the seventeen other employees who were also fired for violating the time card swipe policy in 2004 were younger than the plaintiffs, and four of them were younger than 40-years-old. P. 56.1 Stat. ¶ 39. Plaintiffs allege, however, that three of the employees who were fired (none of whom was apparently under 40) were not similarly situated to the plaintiffs because they had second jobs and were actually defrauding Mount Sinai of time through their

24

swipes.  P. Mem. at 25; D. Frendak Tr. at 95.

While evidence of an employer's disparate treatment of employees in the ADEA's protected class and younger employees can give rise to an inference of discrimination, see Cross v. New York City Transit Auth., 417 F.3d 241, 250 (2d Cir. 2005), plaintiffs' allegation does not show this.  At most, plaintiffs' allegation removes these three employees from the class of employees similarly situated to the plaintiffs.  It remains undisputed, however, that there were eleven employees in the group younger than plaintiffs who were fired for violating the policy, and that four of the employees were younger than 40 years of age.  P. 56.1 Stat. ¶ 39.  Thus, the plaintiffs' allegation does not suggest that younger employees were treated differently when it came to the swipe card policy.

d.     Senior Workers Are More Expensive

Plaintiffs argue that the savings in sick and vacation time afforded to Mount Sinai by firing more senior workers was a motivating factor in Mount Sinai's decision to fire them.  P. Mem. at 26.  Plaintiffs support this argument by noting that Fascia and Diaz would have known the plaintiffs' ages from comparing the videotape to their photos during the investigation, P. 56.1 Stat. ¶ 16, and that Fascia and Diaz participated in the decision to fire the plaintiffs because they prepared the list of employees that was presented to Cohen so that he could make the final discharge decision, id. ¶ 20.  This evidence shows only that some persons within Mount Sinai might have guessed the plaintiffs' ages.  There is no evidence, however, that connects the firings to any desire on Mount Sinai's part to produce savings in sick and vacation time for the

hospital.[2]  And, as was true for all the previous evidence, the inference plaintiffs seek to draw

here must be weighed against the uncontroverted evidence that everyone caught swiping time

cards improperly was fired.

\*       \*       \*

Examining all of the evidence and inferences discussed above, they are together

insufficient to allow a reasonable jury to conclude that plaintiffs' terminations were due to age.

It is important to keep in mind the limited roll of the Court in reviewing plaintiffs'

terminations.  The Court can understand how the firing of a longtime employee for a single

violation of the swipe card policy – when the employee acted innocently and without defrauding

Mount Sinai of any time or money – may appropriately be characterized as irrational, unfair, and

perhaps Kafkaesque.  If it were in the power of this Court to set aside an employer's decision for

these reasons, this case would be a prime candidate in which to do so.  That power has not been

accorded to this Court, however.  Rather, plaintiffs' ability to obtain relief rises or falls solely

based on whether they have provided enough evidence to allow a jury to find that their

terminations were motivated by their age.  The evidence presented in this case would not permit

such a finding.  Accordingly, this Court is unable to provide plaintiffs any relief.

---

[2]  Notably, such a motivation, even if the plaintiffs had offered sufficient evidence to demonstrate its existence, does not violate the ADEA.  The ADEA prohibits discriminating against employees based on their age.  Discriminating against employees based on length of tenure, however, is not prohibited by the ADEA.  See Hazen Paper, 507 U.S. at 612 ("[A] decision by the [defendant] to fire an older employee solely because he has nine-plus years of service and therefore is 'close to vesting' would not constitute discriminatory treatment on the basis of age.  The prohibited stereotype ('Older employees are likely to be ___') would not have figured in this decision . . . ."); accord Revere, 2006 WL 3314633, at \*6.

Conclusion

Mount Sinai's motion for summary judgment dismissing the complaint should be granted.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (e). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Laura Taylor Swain, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Swain. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985).

Dated: November 21, 2007
        New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Alan J. Harris, Esq.
427 Manville Rd.
Pleasantville, NY 10570

David R. Marshall
Edwards & Angell LLP
750 Lexington Avenue
New York, NY  10022

Hon. Laura Taylor Swain
United States District Judge

Conclusion

Mount Sinai's motion for summary judgment dismissing the complaint should be granted.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (e). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Laura Taylor Swain, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Swain. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985).

Dated: November 21, 2007
       New York, New York

                                        GABRIEL W. GORENSTEIN
                                        United States Magistrate Judge

Copies sent to:

Alan J. Harris, Esq.
427 Manville Rd.
Pleasantville, NY 10570

David R. Marshall
Edwards & Angell LLP
750 Lexington Avenue
New York, NY 10022

Hon. Laura Taylor Swain
United States District Judge

27